No. 43,208

BUILDERS, INC., *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, KANSAS; THE COUNTY BOARD OF EQUALIZATION OF THE COUNTY OF SEDGWICK, KANSAS; VERNON E. REED, H. B. SCOTT and FLOYD SCHROEDER, County Commissioners of Sedgwick County, Kansas, and members of The County Board of Equalization of Sedgwick County, Kansas; W. O. WILLIAMS, County Clerk, Sedgwick County, Kansas, and Clerk of The County Board of Equalization of Sedgwick County, Kansas; KING McDONALD, County Assessor of Sedgwick County, Kansas; and MARIE WARDEN, County Treasurer of Sedgwick County, Kansas, *Appellants*, and THE STATE BOARD OF EQUALIZATION OF THE STATE OF KANSAS; and SAM BROOKOVER, PERRY OWSLEY and ROBERT E. LEE GRAHAM, members of The State Board of Equalization of the State of Kansas, *Defendants*.

(381 P. 2d 527)

Opinion filed May 11, 1963.

*Ralph E. Gilchrist*, of Wichita, argued the cause, and *George D. McCarthy*, also of Wichita, was with him on the brief for the appellants.

*James D. Van Pelt*, of Wichita, argued the cause, and *D. Clifford Allison*, also of Wichita, was with him on the brief for the appellee.

*William M. Ferguson*, Attorney General, and *O. R. Stites, Jr.*, and *A. K. Stavely*, Assistant Attorneys General, were on the brief of William M. Ferguson, Attorney General, as *amicus curiae*.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to permanently enjoin the col-

lection of ad valorem taxes for the year 1961 upon the land commonly known and described as the Parklane Shopping Center located in Wichita, Kansas, based upon the assessments of the property for the year 1961.

Appeal has been perfected from the judgment of the trial court permanently enjoining certain defendants from proceeding to enforce and collect any taxes for the year 1961 based upon all or any portion of the 1961 assessments against the land.

The controlling question is whether the trial court had jurisdiction to enter its judgment after it dismissed the State Board of Equalization and its members from the lawsuit.

It is to be noted the caption in this case names as defendants "The State Board of Equalization" and Sam Brookover, Perry Owsley and Robert E. Lee Graham as members of such board. The record makes reference to the State Board of Equalization at numerous places, and also to the State Board of Tax Appeals. They are one and the same. Under G. S. 1961 Supp., 74-2439, the power to act as the State Board of Equalization is transferred to the Board of Tax Appeals; and by G. S. 1961 Supp., 79-1409, "The state board of tax appeals shall constitute a state board of equalization."

Builders, Inc. (plaintiff-appellee) is the owner of three contiguous tracts of real estate designated in the record as Parklane I, Parklane II, and Parklane III, containing approximately 8.988 acres or 391,516 square feet, 7.55 acres or 328,887 square feet, and 2.51 acres or 89,734 square feet, respectively. Collectively these tracts constitute the Parklane Shopping Center, and as a group are bounded on the west by Oliver Street and extend from Lincoln Street on the north to Harry Street on the south. This area is situated in a thickly populated district. Construction of buildings at the Parklane Shopping Center began in the spring of 1960.

In 1961 Parklane I was assessed for that year at $128,600; Parklane II was assessed at $119,500; and Parklane III was assessed at $16,830. These assessed valuations were considerably less than the actual value placed on these tracts by the assessor, which were, respectively, $584,545.55, $543,181.81 and $76,500. The difference in these values is due to the fact that in Sedgwick County all real estate is assessed at approximately 22% of actual values. The figures herein apply to the land only, exclusive of the value of any improvements thereon.

The petition alleges the plaintiff, as managing agent of the owner

of said tracts, filed a complaint with the County Board of Equalization with respect to said assessments. This complaint was heard May 26, 1961; and on May 29, 1961, the County Board of Equalization sustained the assessments concerning which complaint was made. Thereafter on June 7, 1961, the decision of the County Board of Equalization was appealed to the State Board of Equalization. This appeal was heard August 4, 1961, and on the same day, the State Board found the property in question was not assessed relatively higher than other property of like kind in Sedgwick County; that the facts did not justify a reduction in the assessed values; and that the values as fixed by the County Board of Equalization should stand.

Thereafter on November 10, 1961, the present action was filed in the district court of Sedgwick County, Kansas. The petition alleged that the plaintiff, Builders, Inc., was the owner in fee simple of the tracts above referred to and commonly known as Parklane Shopping Center, having acquired title thereto in August, 1961; and that other similar tracts in the Wichita area, describing them as Seneca Square Shopping Center, Boulevard Plaza Shopping Center, Ken-Mar Shopping Center, and Indian Hills Shopping Center, were assessed at amounts disproportionately lower than was Parklane Shopping Center, causing plaintiff to bear more than its proportionate share of the tax burden of Wichita. The petition also alleged the proceedings before the respective Board of Equalization and the results thereof as above stated.

The petition further alleged that both Boards of Equalization and their respective members failed and refused to perform their duties lawfully in that they have knowingly discriminated against the plaintiff so that its tax burden is larger than that of other owners of like property; that knowing of the disproportionate assessment of plaintiff's property, they refused to reduce the Parklane assessments as an intentional discrimination against the plaintiff, and that their action in respect thereto was "so capricious, arbitrary, unreasonable and oppressive as to amount to fraud."

That said excessive assessments were made contrary to law (G. S. 1949, 79-401; 79-501; 79-1406; G. S. 1959 Supp., 79-1409; 79-1412a; 79-1602; and 79-411) without any legislative authority or legal basis, and by reason thereof are illegal and void and impose a tax burden upon the plaintiff which is not uniform and equal. That said excessive assessments contravene Article XI, Section 1, of

the Kansas Constitution, and the Fourteenth Amendment to the Federal Constitution in that they deny the plaintiff equal protection of the law, and by reason thereof are unconstitutional and void to the extent of such denial.

Plaintiff tendered into court the following amounts as one-half of the 1961 taxes based on its claims as to equal assessments: Parklane I, $1,931.78; Parklane II, $1,625.06; and Parklane III, $322.86. (Roughly these amounts are based upon an assessment representing 6% of the true value. Plaintiff's evidence disclosed the other shopping centers heretofore mentioned were assessed at between .7% to approximately 6% of the true value. This was the finding of the trial court.) By its petition the plaintiff requested that the defendants be enjoined from proceeding to enforce or collect any taxes for 1961 based on such excessive, illegal and void assessments.

Answers were filed on behalf of the defendants which joined issues as to allegations of fraud against them, and which specifically denied their acts were unreasonable, arbitrary, oppressive or fraudulent. The answers denied that the plaintiff was entitled to injunctive relief because it had an adequate remedy at law as provided in G. S. 1949, 79-2005.

The case was tried in the district court of Sedgwick County on February 16, 1962, and at the close of plaintiff's evidence the State Board of Equalization and its members orally moved that the case be dismissed as to them. As to this motion the court found:

". . . that inasmuch as this action is not in the nature of an administrative review of the Orders entered by the above-named defendants, and inasmuch as the plaintiff is seeking no relief from the above-named defendants, that this action should be and it is hereby dismissed as to the defendants, the State Board of Equalization of the State of Kansas, and Sam Brookover, Perry Owsley and Robert E. Lee Graham, Members of the State Board of Equalization of the State of Kansas, and it is by the court so ordered. . . ."

At this stage of the case it is to be noted the State Board of Equalization and its members went out of the case, the litigation continuing as to the other defendants.

On April 20, 1962, the court entered judgment against the remaining defendants finding that the plaintiff's property was assessed at percentages of true value greatly in excess of that assessed against substantially all other land in Wichita of like character, resulting in the imposition upon plaintiff of a larger share of the tax burden than was proper, all of which was known to said county officers;

and that their refusal to reduce the plaintiff's assessment knowingly and intentionally discriminated against the plaintiff. That said assessments were unlawful and violated Article XI, Section 1, of the Kansas Constitution and the Fourteenth Amendment to the Federal Constitution. The court therefore adjudged said assessments to be illegal, unconstitutional and void. The court permanently enjoined the remaining defendants to this action:

". . . from proceeding to enforce and collect any taxes for the year 1961 based upon all or any portion of the 1961 assessments against plaintiff's said land.

"It Is by the Court further Considered, Ordered, Adjudged and Decreed that all money for taxes tendered into court by the plaintiff at the commencement of this action be returned to the plaintiff by the Clerk of the District Court."

From this judgment appeal has been perfected to this court by the remaining defendants.

From the above statement of facts in this case, it is evident the appellee took its alleged grievance, first to the County Board of Equalization and then to the State Board of Tax Appeals. These official boards are the administrative agencies provided by law to determine controversies relating to assessments. (G. S. 1949, 79-1601; G. S. 1961 Supp., 79-1602, G. S. 1949, 79-701; G. S. 1961 Supp., 79-1409; 79-1412a; 79-1702; 74-2439; and 74-2426.) Relief claimed by the appellee having been denied by these Boards, the present action was brought to avoid the effect of such rulings.

It has been held from an early date that matters of assessment and taxation are administrative in character and not judicial. In *Symns v. Graves* [1902], 65 Kan. 628, 70 Pac. 591, it was said:

". . . Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case. . . ." (p. 636.)

In the same decision the only grounds upon which there may be judicial interference were pointed out as follows:

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. . . ." (p. 636.)

Other decisions adhering to the foregoing rules are *Finney County v. Bullard,* 77 Kan. 349, 94 Pac. 129; *Salt Co. v. Ellsworth County,* 82 Kan. 203, 107 Pac. 640; *Eureka B. & L. Ass'n v. Myers,* 147 Kan. 609, 78 P. 2d 68; and *Hanzlick v. Republic County Comm'rs,* 149 Kan. 667, 88 P. 2d 1111.

From the foregoing authorities it is apparent the limit of the trial court's authority in the instant action was to determine whether the final decision made by the highest administrative tribunal, the State Board of Equalization, was brought about by fraud, abuse of discretion or conduct so arbitrary, capricious, unreasonable and oppressive as to amount to fraud. The appellee so alleged and thus came within the ambit of the above rule.

The issue to be tried in the lower court was whether the administrative action—the final order of the State Board of Tax Appeals—was actuated by improper motives. That question had to be determined upon the facts as they were known to the Board of Tax Appeals at the time of the hearing before it.

With the case in this posture the trial court sustained the motion of the State Board of Equalization and its members to dismiss them from the case, and not only did that body and its members go beyond the jurisdiction of the trial court, but the rest of the case went with it.

It is to be noted the appeal perfected by the appellants in this case was "from the Findings of Fact, Conclusions of Law, Judgment and Decision of the Trial Court, entered on April 20, 1962." The decision dismissing the State Board of Equalization and its members was made on the 16th day of February, 1962. The State Board of Equalization and its members were out of the case and had no reason to appeal. The appellee, Builders, Inc., did not cross-appeal from the order dismissing the State Board of Equalization and its members from the case.

By the appeal to the State Board, the County Board of Equalization was deprived of jurisdiction and the whole controversy became vested in the State Board as the superior administrative appellate tribunal. Thereafter, any action taken by any of the county officers was entirely subject to the decision of the State Board. That body's order was a decision of an administrative nature rendered by statutory authority and conclusive not only on the appellee but on the county officials as well.

In a case such as this the legislature specifically prohibited an

appeal from the decision of the State Board of Equalization by the following proviso in G. S. 1961 Supp., 74-2426:

". . . *Provided,* That no such appeal may be taken to the district court from any order determining, approving, modifying or equalizing the assessment of property for property tax purposes. . . ."

This does not mean that the taxpayer is without recourse. The appellee had an adequate remedy at law under G. S. 1949, 79-2005, whereby it might have paid the tax under protest, and then brought suit to recover such amount as may have been improperly paid, but the appellee did not choose to pursue that remedy. Instead the appellee brought the present action to enjoin the defendants from collecting the taxes in question. Certainly courts of equity will intervene to protect the taxpayer against fraudulent or oppressive conduct of an administrative body ( *City of Kansas City v. Jones & Laughlin Steel Corp.,* 187 Kan. 701, 703, 360 P. 2d 29) or in some cases an injunction may be granted in a suit brought by the taxpayer. ( G. S. 1949, 60-1121.) In either event, the attack is upon the decision of the official board which rendered the decision upholding the acts of the subordinate officials or body. It follows, the decision of the State Board of Equalization in the instant case is the point of attack. For the appellee to succeed, the fraudulent or oppressive conduct must be shown to have animated the action of the State Board.

It is apparent the appellee throughout the trial of the case recognized that it was required to prove the fraud, which it had alleged against the State Board of Equalization, independently of any other fraud which may have been charged in the case.

Upon the facts and circumstances presented by the record in this case, it appears the assessment of Parklane Shopping Center at 22% of actual value, as approved by the action of the State Board of Equalization, was irregular and grossly discriminatory, thus the product of arbitrary discrimination, not because the appellee's property was assessed too high, but because property of the same class and character owned by others was not assessed on the same basis. Other shopping centers in Wichita were assessed at not to exceed 6% of actual value, thus indicating that they were systematically assessed at much lower values. ( See, *Raymond v. Chicago Traction Co.,* 207 U. S. 20, 52 L. Ed. 78, 28 S. Ct. 7; *Sunday Lake Iron Co. v. Wakefield,* 247 U. S. 350, 62 L. Ed. 1154, 38 S. Ct. 495; and *Cumberland Coal Co. v. Board,* 284 U. S. 23, 76 L. Ed. 146,

52 S. Ct. 48.) We are constrained, however, to hold that the trial court lost jurisdiction of the case when it dismissed the State Board of Equalization and its members.

If this were not true, the order of the State Board upholding and directing the county officials to levy the *ad valorem* tax on the basis of the 1961 assessed valuation of Parklane Shopping Center, would contradict the order of the district court enjoining the collection of the tax based upon such assessment. Both of these tribunals have superior authority over the county officials concerning the levy and collection of such tax. Obviously, the county officials cannot be placed in this dilemma.

The judgment is therefore reversed.

FATZER, J., concurs in result.