No. 38,981

WAYNE JOHNSTON, et al., *Appellees,* JOE VAN TIEGHEN, et al., *Appellants,* v. THE CITY OF COFFEYVILLE, KANSAS, a Municipal Corporation, et al., *Appellees.*

(264 P. 2d 474)

Opinion filed December 12, 1953.

*Richard L. Becker,* and *Morris D. Hildreth,* of Coffeyville, Kansas, were on the briefs for the appellants.

*Walter S. Keith,* of Coffeyville, Kansas, was on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: Wayne Johnston, Joe Van Tieghen (sometimes shown in the record as Van Tiegen) and other persons as plaintiffs commenced an action against the city of Coffeyville and the members of its governing body and the county clerk and county treasurer of Montgomery county, to enjoin the collection of assessments against the lots and lands of each plaintiff made by the city in connection with a county road improvement. The city demurred to the petition and the demurrer being sustained Van Tieghen and some of the plaintiffs perfected an appeal to this court. The ruling on the demurrer is specified as error.

In reviewing the petition we shall omit all references to the status of the parties. Plaintiffs alleged they owned certain lots and as such owners would be required to pay any taxes assessed against them; that prior to June 10, 1952, the board of county commissioners of Montgomery County made and effected certain improvements on a county road half of which was within the city of Coffeyville and half of which was in the county outside the city, under the provisions of G. S. 1951 Supp., 68-706, and that the procedure for initiating and making said improvements was in all respects as provided by law; that upon the completion of the improvement Montgomery county billed the city of Coffeyville for one-half of the costs of the improvement in the sum of $4,048.80, and thereafter and on June 10, 1952, the city of Coffeyville passed its ordinance duly published on June 12, 1952, purporting to assess taxes against the real estate owned by plaintiffs, all without authority of law, and that such assessments were unlawful, illegal and void. A copy of the ordinance was attached to the petition as a part thereof. Briefly stated it was further alleged that unless enjoined the city of Coffeyville would certify the illegal taxes to the county clerk who would place them on the tax roll for collection by the county treasurer; that the taxes would become a lien on the property of the plaintiffs and they would be forced to pay the taxes or their property would be sold under such lien. They prayed for injunctive relief.

The ordinance above mentioned contained preliminary paragraphs setting up the facts as to the road improvement by Montgomery county under the above mentioned statute, and that the county had certified to the city that one-half of the cost in the sum of $4,048.80 was due from the city as provided by law; that costs

of publication and other expenses in connection with the ordinance and in issuing bonds of the city would amount to $146.91 and the total cost to the city was determined to be $4,195.71; that the city's share of the cost should be apportioned by law on an equitable ratio among the taxpayers and after consideration the city governing body found an equitable ratio of distribution would be $1,649.27 to the city at large and $2,546.44 to the property owners fronting on the road who would be benefitted by the improvement, to be paid by the property owners on a front foot basis; that the total frontage, excluding intersections, was 2,448.5 feet; that it was necessary to issue bonds of the city to pay its share of the road project and it was ordained by the city that a road district was created consisting of the lots and parcels of land lying along and fronting on the improved road, except street intersections; that the city's share of the costs of the improvement and other costs incident thereto should be paid as follows: by a general levy the city should pay $1,649.27, and that the lots and parcels of land lying within the benefit district should be assessed $2,546.44 which should be apportioned and assessed against the lots and parcels on an equal front foot basis, following which is a list of frontage, description of lands and the amount of the assessment. Section 4 of the ordinance provided that the sums apportioned and assessed against the lots and parcels of land should be collected in ten annual installments, the first installment to be extended upon the tax rolls for 1952 with one installment each succeeding year, provided however, that upon taking effect of the ordinance the city clerk should give written notice to each owner of property of the amount assessed to his property "and that such owner may redeem his property by paying the whole amount of such assessment within thirty (30) days from the date of such notice, and provided further that the Board of Commissioners of the City of Coffeyville, Kansas, shall issue internal improvement bonds of the City in payment of any balance due as provided by law." Section 5 of the ordinance directed the city clerk to make proper extension of the several installments and interest thereon and to certify the same to the county clerk within the time prescribed by law to be collected as other taxes, under like penalty.

The ground asserted in the demurrer was that the petition did not state a cause of action in favor of the plaintiffs and against the defendants.

Before taking up appellants' contentions of error, we note that it is alleged in the petition and stated in the taxing ordinance that the road improvement project was done under the provisions of G. S. 1951 Supp., 68-706. That statute, as did its predecessors, provides for the improvement of roads by the county the cost of which is borne by benefit districts. The section is long and we quote here only two portions pertinent to the problem presently before us, viz.:

"When said apportionment to the land within the benefit district is determined, the county commissioners shall appoint a time for holding a special session to hear any complaint that may be made as to the apportionment of cost, and the county clerk shall mail a written or printed notice to the owner or owners of any tract of land liable to special assessments, *which notice shall set forth the time for hearing complaints and the amount assessed against each tract within the benefit district,* and the last day for paying the assessment in full. Such notice shall be mailed at least two weeks prior to the time for hearing the complaints. *At the hearing the commissioners may alter or change the apportionment for good cause shown.* . . . When a benefit district hard-surfaced road is constructed alongside the corporate limits of any city the city shall pay fifty percent (50%) of the cost of the construction thereof, *apportioned on an equitable ratio among the taxpeyers, as prescribed by the council or other governing bodies,* and may issue city bonds to pay the city's share of the cost of such improvements. . . ." (Emphasis supplied.)

Appellants contend that the facts alleged by them disclose that the application of the statute as made by the city to provide special assessments against them is in violation of article II, section 1 of our state constitution which provides that the legislative power of this state is vested in a house of representatives and senate, and of article XII, section 5 which provides that provision shall be made by general law for the organization of cities and their power of taxation and assessment shall be so restricted as to prevent the abuse of such power. Appellants also contend that the application of the statute made by the city violates their right to due process of law under the fourteenth amendment to the constitution of the United States.

We shall consider first whether that portion of the statute under consideration conferred on the city a power of taxation without restriction, and in violation of article XII, section 5 of our state constitution which states that provision (by the legislature) shall be made by general law for the organization of cities, and their power of taxation and assessment shall be so restricted as to prevent the abuse of such power. The word assessment as there used is in conjunction with the preliminaries to the levy of taxes. We think

it is not debatable that apportionments of the costs of road improvements to the lots and pieces of land lying within the road benefit district created by the city's ordinance are not taxes within the purview of the constitution, but are special assessments, for it has been held early and late that an assessment against property by reason of benefits derived from a public improvement is not, in the constitutional sense, a tax. See *Paine v. Spratley*, 5 Kan. 525, 546, and *McCall v. Goode*, 168 Kan. 361, syl. ¶ 1, 212 P. 2d 209. We shall not discuss further appellants' contention that the statute under consideration, insofar as applied to the city, is invalid for the reason it contains no restriction on the city's power of taxation.

The question remains however whether, under the statute, the city had the power to make the apportionment of cost in the manner it did.

In *State, ex rel., v. Hines*, 163 Kan. 300, 182 P. 2d 865, we considered the constitutionality of a school reorganization act. In that act an attempt was made to delegate to a school reorganization committee the power to alter, reform and consolidate school districts. The opinion contains an extensive citation of the authority of the legislature to delegate its power to legislate and treating of the difference between legislative and administrative power, and it was held that the legislative power cannot be delegated unless there is constitutional sanction therefor. The case is of interest here because of the holding that a delegation of administrative authority (of less dignity than a legislative authority), must fix a reasonably clear standard which governs the exercise of the authority.

Even though the above mentioned constitutional provision may be said to authorize the governing body of the city to legislate, the exercise of that authority is not untrammeled. Cities have only such power as is granted to them, take nothing by implication, and the only additional power they may acquire is that necessary to make effective the power granted. In *Yoder v. City of Hutchinson*, 171 Kan. 1, 228 P. 2d 918, which involved damages under proceeding in eminent domain, and where extent of a city's power was involved, we said:

"It was early held, and over the years the rule has been, that a municipal corporation is a creation of law and can excercise only powers conferred by law and take none by implication, and that the only power it may acquire in addition to that expressly granted is the power necessary to make effective the power granted. See *State v. Hannigan*, 161 Kan. 492, 498, 170 P. 2d 138, and cases cited." (l. c. 8.)

We examine the statute under which the city asserts it had the power to apportion the assessments as it did. That statute does provide specifically for the creation of a benefit district in the county outside the city, for the apportionment of costs, notice of hearing of complaints, hearing thereon and other provisions as noted in the portion of the statute as quoted above, but insofar as the city's share of a benefit district road is concerned, the legislature provided only that fifty percent of the cost should be paid by the city "apportioned on an equitable ratio among the taxpayers, as prescribed by the council or other governing bodies." The statute contains no provision that the city may create any benefit district within the city, no provision for charging property on a front footage base, rather than on its value, no provision for notice that those against whose property an assessment may be made shall have any opportunity to be heard and object, nor for that matter that an assessment may be made in such manner that it can be paid in a series of annual installments, and this we deem significant in view of the care taken in provisions made for the rights of the owners of property in the benefit district outside the city. We have searched the statute to discover any possible restriction on the city's power to apportion its share of the cost of the improvement, and all that can be found is that it shall be "on an equitable ratio among the taxpayers." Although on its face the statute makes the city liable for one-half of the cost of the improvement, and authorizes it to issue city bonds to pay its share of the improvement, we cannot reach a conclusion that it is necessary to make that power effective that it may be said that "apportioned on an equitable ratio" as used in the statute authorizes the creation of a benefit district, and that the city may pass an ordinance creating such a district, apportion to the district a part of the cost on a front foot basis without regard to values or benefits, and make an assessment which the property owners have no opportunity to question in any manner.

Insofar as appellants' contention that the application of the statute as reflected in the ordinance and that they are being deprived of property without due process of law is concerned, we need not discuss the power of the legislature to levy a tax or assessment for it did not do that. It attempted to confer that power on the governing body of the city. Appellants' contention is that the city, in fixing the apportionment as it did was in such manner they had no notice and no right of protest and thereby they were deprived of

property without due process of law. In support they cite 48 Am. Jur. 695, 51 Am. Jur. 669, 61 C. J. 565, 653, and *City Rly. Co. v. Roberts*, 45 Kan. 360, 25 Pac. 854, and *Water Supply Co. v. Roberts*, 45 Kan. 363, 25 Pac. 855. Without reviewing these authorities here, it may be said they support the contention.

Although the appellee city directs our attention to authorities that the right of the owner or occupier of a piece of land to have ingress and egress to a public highway is a valuable right, as to which there can be no dispute, and to certain of our statutes pertaining to public improvements where provision is made for division of costs, insofar as the precise questions now under consideration are concerned it relies solely on *Gilmore, County Clerk, v. Hentig*, 33 Kan. 156, 5 Pac. 781. That case did not present any question of delegation of power. The action was one brought to enjoin the city of Topeka and other taxing officials from collecting a tax (in reality an assessment under Laws 1881, chapter 37, ¶ 19) levied upon the lots of plaintiffs to defray the costs of building a sewer. The district court denied the injunction and appeal followed. In this court a lengthy opinion was filed and reference is made thereto for a fuller account of the facts and the reasoning of this court. Similarities and dissimilarities between sewer projects and street improvements were noted, but it was held that before special taxes can be made a fixed and permanent charge upon the property of individuals the owners must have notice thereof with an opportunity to be heard and an opportunity to contest their validity and fairness. It was said in that opinion that the tax may be levied provisionally before the notice is given and be made a permanent charge afterward, but that the tax cannot become fixed and permanent until sufficient notice has been given. We need not comment on the sufficiency of the notice there involved, which did give the taxpayers some opportunity to object, for the reason that the ordinance presently involved gave the property owners no opportunity to object but fixed a permanent charge on their real estate.

A study of the statute applicable under the facts pleaded in the petition leads us to conclude that the provision of G. S. 1951 Supp., 68-706 delegating to a city the power to apportion its share of road construction costs "on an equitable ratio among the taxpayers" does not fix any reasonably clear standard under which the city governing body must act, and further that even though there were no infirmity in the statute, the ordinance of the city fixing and de-

termining the apportionment of costs of the road improvement against plaintiffs' real estate is invalid in that it contained no provision for notice of the apportionment against their real estate to the taxpayers, nor any opportunity for them to object but without notice levied a permanent charge on their pieces of real estate.

The decision of the court sustaining the defendant city's demurrer to the plaintiffs' petition is vacated and set aside and the cause is remanded to the trial court with instructions to overrule that demurrer and for further proceedings consistent with this opinion.